Thank you. Good afternoon, everyone. We are ready to proceed. The first case is Binderup v. Attorney General of the United States. Mr. Nemiroff. Good afternoon, Your Honors. Patrick Nemiroff on behalf of the United States. And if I may, I'd like to reserve five minutes for rebuttal. The plaintiff in this case, Daniel Binderup, is prohibited from bearing arms by Section 922.g.1 because he was convicted of a crime punishable by up to five years in prison. In Heller, the Supreme Court stated that that prohibition is presumptively lawful. And this court in Marzarella explained that such longstanding limitations are exceptions to the right to bear arms. The reason for that, as a number of courts have recognized, is that the right to bear arms, like the right to vote or the right to serve on a jury, is a civic right and is, therefore, subject to categorical exclusions of populations deemed unfit to exercise that right, whether that be because of mental illness, drug use, minors, or, as in this case, because you've been convicted of a serious crime. Now, in Barton, this court, like every other court of appeal before it, rejected an as-applied challenge to Section 922.g.1. It declined to foreclose the possibility of as-applied challenges in the future, but it made clear that in order to be successful in such an as-applied challenge, a plaintiff would have to show that they were convicted of a minor crime. And here, the plaintiff simply cannot make that showing because his conviction was indisputably a serious crime. And the best indication of that is the fact that Pennsylvania has subjected his crime to a punishment of up to five years in prison. And in that respect, Pennsylvania is not an outlier. As we put out in our brief, the conduct that the plaintiff was convicted of, a 40-year-old man having sex with his 17-year-old employee, would be subject to significant criminal penalty in quite a number of states. Go ahead. We said in Barton, though, that the passage of time is a factor that we would consider if he's living as a law-abiding citizen or typical of a law-abiding citizen, no different from one who hadn't had an indiscretion in the past, that those were factors that we would consider in determining whether it should be applied or if it is unconstitutional as applied here. How do you respond to that? Well, the Court certainly left open the possibility that that might be a factor. I don't think the Court didn't have an occasion to draw out the precise test that must be followed because, of course, the Court held that that plaintiff easily fell within the category of individuals excluded. And what we imagine the Court to be saying in Barton is that you have to fall outside of that group of individuals, which historically has been the group of individuals convicted of a serious crime. So we don't think that the passage of time, for instance, is a factor. Did we focus on the seriousness of a crime? In Mazarella, we did address that, and we said, and this is mirroring pretty much what Heller said, at its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons. So the focus seems to me to be whether you're law-abiding or not. Now, in Heller, Justice Scalia, writing for the majority, said, whatever else is said, it leaves for future evaluation. It surely elevates, above all other interests, the right of law-abiding, responsible citizens to use arms. So in the Supreme Court and in our Court, we are addressing or focusing on law-abiding citizens. You're focusing on the dangerousness of the individual as to whether he or she has Second Amendment protections. That's not exactly our position, Your Honor. We are also focusing on law-abiding citizens. And our argument is simple. This individual was convicted of a serious crime. He's not a law-abiding citizen. Rather, he falls within that group of people who have historically been excluded from exercising the Second Amendment right. Now, dangerousness, I think, comes in, actually, in Plaintiff's argument. And the Plaintiff has really two responses to our position. And one of them is that a court should engage in an ad hoc determination of whether the plaintiff before them is likely to commit a crime in the future. Basically, take whatever facts the court has in front of it and determine whether that individual is harmless or not. And respectfully, we think that that can't be the law. First of all, it has no basis in the history of the Second Amendment. It seems like that's what Barton was suggesting. Well, I think in Barton, the court made clear that the crime had to be minor. So I think that is a predicate in Barton. And in Barton, the court did not have an occasion to really prescribe the precise rule that this court needs to follow here. And so the factors, when you actually look at the factors that the Plaintiff points to, it gives you good reason not to rely on those. So really, what the Plaintiff is envisioning here is that case by case, individual by individual, the thousands of individuals can come before a district court and say, look at me, based on the time since my crime or the nature of my crime, you should find me harmless. But there's no principled basis on which to make that determination. So here, he was convicted of... Maybe that's our task for today. Well, it doesn't need to be the task because the Second Amendment historically has been subject to categorical exclusions. And so the real test in determining whether this individual has the But doesn't Barton teach us that at least when you're looking at 922-991-G, that you have to, as applied, you have to look at who you're dealing with. And that the fact of the conviction in and of Well, I think the most important factor is always going to be what crime was this individual convicted of and what did the legislator of the state in which the individual was convicted think of that crime. And here, Pennsylvania has subjected the Plaintiff's crime to a punishment of up to five years in prison. But they've also called it a misdemeanor. Well, as the Supreme Court recognized in Tennessee v. Gardner, there are many misdemeanors that are more assault on a child under 12 years old, a misdemeanor, or throwing a firebomb into a moving vehicle. So the mere fact that it's labeled a misdemeanor as opposed to a felony doesn't bear on the constitutional question. What sort of person under Barton would be entitled in an as-applied consideration to say that my right to bear arms is being offended by my classification here? We imagine that what the court was saying in Barton would be that if someone was convicted of a crime that, you know, was just over that two-year line and the state was an outlier, that, you know, other states didn't view that crime as equally serious, maybe that would be the sort of crime that you could treat as differently. But the court in Barton didn't say that there would be a lot of successful as-applied challenges. It simply left open the possibility of as-applied challenges. And every court of appeals to consider as-applied challenges to this section have rejected them, and they've acknowledged that there's a long history of excluding individuals convicted of serious crimes. The other third circuit cases which have rejected an as-applied position under Barton, the plaintiff has had multiple convictions, has had drug convictions. They're very different from Mr. Binderof, who, although it's a serious offense, has only one offense, and it's what, 19 years ago, and he's been a good law-abiding citizen ever since. Now, isn't that persuasive in our consideration of whether he would misuse a firearm if he got back the right to use one? I don't think Barton requires this court, and I don't think this court should engage in that sort of analysis. And understand what it would mean. So he was convicted of having sex with a 17-year-old 19 years ago, as you say. If he was convicted of having sex with a 15-year-old, would 19 years be enough, or would it need to be 30 years? If he was convicted 10 years ago, would that be sufficient? There's no principle basis on which to draw these lines, and the plaintiff here hasn't presented anything in the law or anything statistically speaking to show where that line would be. He hasn't brought forth evidence that says, well, after 19 years, suddenly someone convicted of this crime is no more harmless than a law-abiding citizen. Is it suddenly? I don't think – I mean, it's not sudden. It's an accretion, which – But the point is that even in as-applied challenges, courts need to be able to draw principled lines. And here, first of all, that's unworkable. As this court itself recognized in Ponterelli, courts really aren't institutionally capable of making these sorts of determinations. Well, based on the facts before us, is this individual going to commit a crime in the future or not? And it's unnecessary because the Second Amendment right is subject to categorical exclusions, and it's not – and, you know, the plaintiff hasn't pointed to, at the founding, a practice of looking at each individual and saying, are you dangerous or are you not dangerous? What is the government's definition for a law-abiding citizen? Under Section 922G1, if you've been convicted of a crime punishable by more than one year or a crime that's labeled a misdemeanor that's punishable by more than two years, then you're excluded and we don't – you know, if you fall within that category, then you're not law-abiding. Now, we recognize this court in Barton left open the possibility of an as-applied challenge, but this is not that case. This is a case where someone was convicted of a crime that is subject to a significant punishment that many states would subject to a significant punishment. So this individual is not a law-abiding citizen and does fall within that categorical exclusion. The focus is on the punishment, not on levels of violence or the nature of the offense itself? I think the Congress deferred to the judgment of the state legislatures in determining how serious a crime is, and that's, I think, appropriate, and that's what the court should do as well. You know, another argument that the plaintiff makes, although it's a little bit unclear what weight the plaintiff is putting on it, is that this conduct wasn't punishable as a felony at the time of the founding. But as a number of courts have recognized, the question isn't whether there's a precise historical analog, it's whether it's a serious crime as judged by current state legislatures, and indeed, you know, the position that it would in any way hinge on whether it was a felony at the founding leads to absurd results. So, for example, you know, someone who had had sex with a 13-year-old, you know, they could have firearms, whereas somebody who had committed adultery, you could take away their firearms. So that can't be the test. The test is under the Second Amendment, if you've committed a serious crime, you can be excluded. Here he undoubtedly has. And any other test really leads the court into an area that I just don't think the courts are capable of dealing with, as this court recognized in Ponerelli. Yeah, talk about the offense in this case. Does Pennsylvania treat first-degree misdemeanors as a serious crime or a minor one? Certainly as a serious crime, because they're punishable up to five years. Up to five years. Yes, and if you look at some of the other first-degree misdemeanors we list in our brief, as I already said, assault on a child under 12 years old, putting a firebomb into a moving vehicle, involuntary manslaughter, I think these are serious crimes, as is the crime that the plaintiff was punished for here, as indicated by the legislature's judgment. I see that my time's up. Okay. I'm going to spend time for rebuttal. Thank you. Good afternoon, Your Honors. May it please the Court, Alan Gura for the Appellee Cross-Appellant, Daniel Binderup. Five years ago, the government stood before this court and conceded in Barton, and that concession was very clear in their brief, which we quote at page 41 of the red brief, that as-applied challenges are available under Heller. This court accepted that concession, and it did not merely leave open the possibility that there might be some as-applied challenge in theory, a prospect that the government now asks the court to close. Rather, this court set out a specific test explaining how it is that as-applied challenges would be dealt with when they are brought before the court. In fact, Mr. Barton made such a challenge in this court, and the court set out its method of dealing with it, and the court stated that to raise a successful as-applied challenge, an individual must present facts about himself and his background that distinguishes circumstances from those of persons historically barred from Second Amendment protections. Then it gave two examples. One example discussed a felon convicted of a minor nonviolent crime who might show that he is no more dangerous than a typical law-abiding citizen, and then the court went on to say separately, similarly, a court might find that a felon whose crime of conviction is decades old poses no continuing threat to society. May I ask you a question about that phrase, because I was kind of struck by it also? How can you be a felon if you're convicted of a minor crime? Am I misreading that? If you're a felon, you're not convicted of a minor crime. That's correct. We would agree with that position that felonies and misdemeanors, that's the line that we've drawn traditionally to distinguish between minor and perhaps not so minor crimes. Now, the Drake case tells us that we have to defer to the state's legislative judgments, and so perhaps the government thinks that Pennsylvania should have prescribed us as a felony. It did not, and counsel mentioned it. Well, in saying that it's a five-year possible imprisonment misdemeanor, that seems to me as described as a fairly serious crime. It is a serious crime, but if I may circle back, the distinction between, I think that the court was getting at in Barton, between the minor crime and then the other type of crime is that I think the court might have been referencing the fact that 922G1 does not itself use the terms felonies and misdemeanors. That is, the statute applies broadly to include both felonies and misdemeanors, and so people who might raise as-applied challenges might come before the court with either a felony record or a misdemeanor record. Either way, it doesn't matter. The court has to assess whether or not that person has presented evidence that shows that they are not the type of person who has traditionally been excluded from the right to bear arms, and the traditional justifications that the court referenced in Barton, and Barton discusses this at some length, go to dangerousness. So we don't have and we do not make the argument, and whatever else our briefing has done in this case, I think it's been very clear on this fact, we do not make the argument that we must look to the framing error to see exactly whether or not a crime was or was not classified as a felony or was or was not subject to disarmament. Rather, the felony misdemeanor exception only goes towards whether there's a presumption in the case. That is, Heller tells us that felons, it's okay to presumptively disarm them. There is no such presumption that applies to misdemeanors, but there are certainly some felons who, for example, are accused of nonviolent offenses. Martha Stewart, of course, is a classic example presented in the title of a leading article on the subject. Martha Stewart not being somebody who we would imagine would be dangerous with a firearm. The framers would not have- I wouldn't mess with her, but all the same, she is not sort of the classic felon. When we say felon, that's not who we're thinking of. At the same time, we disarm in this country, and properly so, people who are convicted of crimes of domestic violence, even if they're classified as misdemeanors. Does Heller focus on the labels that we commonly use, felon, misdemeanor, minor crime, serious crime? It seemed to me the focus was on whether you're a law-abiding citizen. That's correct. Well, the contrast was between felons as mentally ill and law-abiding and dangerous people. And Judge Beyer in the Ninth Circuit in the Chauvin case, I think, picked up on this as well. The best sense that we can make out of Heller is that there is a presumption which may be overcome when we're talking about felons. A felon is somebody who's not law-abiding, but at the same time, that only gives you a presumptive disarmament, which may be overcome. Every circuit that's looked at this, including, of course, this court in Barden, has said that can be overcome with specific evidence. Now, if you're dealing with a misdemeanor, let's say somebody who's engaged in a misdemeanor crime of domestic violence, under the G9, they're prohibited. We would say, well, historically, that wasn't something that was considered a felony. It wasn't something for which people were disarmed, and society regrettably didn't take that as seriously as perhaps it should have. But we know that these are people with a very high propensity for recidivism. They're dangerous to society. And so that statute, as Barden explained, and every court that's looked at it has explained, passes Second Amendment scrutiny, not because we look to exact historical analogies, but because it will pass any level of scrutiny. It's a category that makes sense because people who've committed those crimes, even though they're misdemeanors, are dangerous, and they can be disarmed. Now, shifting over to what Mr. Bindrup has done here, while nobody would approve of it, it didn't involve violence. It didn't involve firearms. There's absolutely nothing in his record, either in the record of conviction or anything in his life, before or since, that indicates that he's a danger to society with firearms, which is why, and this is not a minor point, the state court in Pennsylvania restored his firearm rights. Could it not be said, nonetheless, that he was convicted of a serious offense? It could be said. Just because he exposed himself to a term in prison of five years, but there was more attached to his conviction, loss of ability to sit on a jury, loss of his voting rights, and I don't know if there were any other incidents to his conviction, but it was treated pretty seriously. It was treated seriously, and we don't make light of the conviction. At the same time, the conviction does not evince nothing in that record. It evinces a traditional grounds for disqualifying somebody from keeping arms, which is, of course, what this court focused on in Barton. Barton was not merely a suggestion. Let's look at what Barton also referenced. Barton referenced and relied upon the Britt case from North Carolina. Now, there we had, I think, a very serious crime. Mr. Britt was a drug trafficker, but the court said that- Is that a Second Amendment case? I believe Britt was raised under the- The state statute. It was a state constitutional analog, I believe. But in any event, this court looked at the Britt case as a model for an as-applied challenge under the Second Amendment. And in Britt, we had basically a drug trafficker who was able to prove under his circumstances that given the passage of time and perhaps other factors in his personal life, he was now a law-abiding citizen. The government takes this very extreme position that once you commit a crime, you are forevermore not a law-abiding person. And essentially, the Congress, or perhaps some legislature, can take away fundamental constitutional right merely by saying, ah, you're disqualified because you violated a statute. No federal court has- Isn't there an aspect in taking away the right to a gun, not only of saying we want to keep guns from dangerous people, but as part of the punishment, that if you as a citizen commit these unlawful acts, you are giving up part of your privileges as a citizen, the privilege, the right to vote, the right to have a gun. And that is something that is punishment to the defendant who does it. It is also a deterrent to other members of society who can think about, well, if I'm going to commit a crime, I've got to think about these repercussions. Your Honor, we would not think that for several reasons. First of all, this was a state conviction. It's not as though the state of Pennsylvania chose to take away Mr. Bindrup's gun rights. In fact, his gun rights were restored by the state court. So if we did think of it in those terms that this is essentially a punitive consequence, then the legal system here that has dealt with Mr. Bindrup has decided that he should not be subject to that punishment. Secondly, Your Honor, we've always imagined disarmament as being something based upon the need to protect public safety. It's more of a utilitarian argument rather than as merely a punitive act. For example, we don't take away people's right to worship or right to speak freely or other things that might be valuable to this fundamental right. And especially here, we're talking about a right that secures the means of self-defense for one and one's family in case of a violent attack. It would be somewhat petty for our justice system to take that away from someone just because we disapprove of something they've done. There are good reasons to disarm people, and those should always be tied into public safety as opposed to some period measure. Just thinking of the same point that Judge Roth made, I haven't read Heller in quite a while, but I believe that the Supreme Court traced the history of gun possession way back to revolutionary times. And essentially, if you breach your civic duty and you're not a good citizen, you may forfeit your right to possess a gun. You have no Second Amendment protection. The Supreme Court actually did not elaborate very much on that dicta speaking about presumptively lawful disqualifications, and that's been the subject of a great deal of debate. It's been a wonderful font of all kinds of law review articles that have taken the Supreme Court to task for not exactly explaining the history. I think this Court tried to do that in Barton. Barton was the case where this Court went through the history and tried to see what the roots of this were, and Barton explained that going back to, for example, the proposals made by the various ratifying conventions where the right to arms was proposed for people other than those who were not peaceable citizens, we know that during the Revolution people who were loyal to the king were disarmed of certain guns. Could you address this idea of an individualized inquiry or as-applied challenge? Sure. How is that going to work out? Is this going to be motions in district courts to regain possession of a gun because I have become a good citizen? Well, there are several ways that this can be dealt with. First of all, this used to be something that district courts dealt with all the time until the early 1990s where the funding for Section 925C was taken away. It's important to recall that when 922G1 was enacted, the Congress also enacted 925C, which directed the ATF and then a district court on review to inquire into the circumstances regarding the disability and the applicant's record and reputation that are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. That's the language of 925C. So this was something that existed in law. It was pre-Heller, pre-Second Amendment. Courts were dealing with this. The ATF was dealing with this. It went away because of the funding dispute in the Congress. Perhaps following this and other cases, Congress might want to revisit whether or not it's a better use of the government's resources to take this out of the district court and back into the ATF and restore the funding. If it doesn't do that, though, in a post-Heller environment, we are now told there's a Supreme Court case on point that says people have a fundamental individual right to keep and bear arms for the purpose of self-defense. This court and every other court of appeal, and there have been a lot of them who have examined the Heller opinion, have said as-applied challenges must be available because it's only a presumption which may be overcome as to this disability. So we took advantage of it by filing a Declaratory Judgment Act case. We filed several of them in this circuit. We've won both of them. And we'll see the Suarez case coming up soon, I suppose. And this is absolutely the business of the federal courts. The government says, oh, it's too hard. We can't draw any lines, so let's just throw the Second Amendment away and forget about Heller and not have to deal with this. Well, I'm sorry that it's such an inconvenience for the government, but respectfully, if we're going to start paring back parts of the Constitution in order to relieve the workload for the government and the courts, we can do other things. For example, we are still within living memory of a time when the Supreme Court would not have found that the Commerce Clause tolerates 922G1 at all. So is the solution perhaps to say not let's pare away people's individual rights because it's too much of a burden for the government to deal with? We can also say this doesn't impact interstate commerce, and so there shouldn't be a prohibition in the first place. Of course, we wouldn't do that because, like it or not, we have Rickard v. Shilburn. We've had a very expanded use of the Commerce Clause. We've got a large federal criminal code, and the courts and the government are now in the business of applying it. Well, we also have the Bill of Rights. That's also part of the Constitution. It was ratified after the Commerce Clause, and it secures certain fundamental rights to people, and people are entitled to come to federal court and get relief for those. Is there some better system that we can devise to resolve these issues? Yes, there is, and I would hope that the Congress deals with that seriously. But right now what we're dealing with is a man who has been convicted a very long time ago of a crime which, although serious, was not violent and does not meet the traditional requirements for disarmament, and that has to be taken seriously. And the government will not say that there's going to be some other case that they will approve because in every case they will resist it. And I think that perhaps the government can also use better judgment in not filing the appeals in cases like this. There are certain other exclusions. If I remember correctly, if you are dishonorably discharged from military service, you have no Second Amendment protection. Is that right? That's correct. Now, under your theory, then, that person, regardless of the offense that he or she has committed, they make an application and has applied challenge? I suppose a bar could be extended to that disqualification as well. Again, it would depend on the circumstances. It would depend upon what was the offense for which they were discharged dishonorably, what have they done since. It's notable your Honor brings it up because Mr. Suarez, who is coming here soon, actually has a security clearance. He's a decorated soldier, and the government is appealing their loss on the as-applied challenge there. They entrust him with the nation's secrets and interests of national security, but they don't entrust him to defend his own home. And I bet that until this Court clarifies for the government that this is actually a meaningful, operative part of the Constitution, they're going to appeal every case. I think perhaps they should not do that. Mr. Grager, thank you very much. Mr. Nemiroff? Thank you. Individuals convicted of serious crimes have traditionally lost their right to vote, their right to serve on a jury, and their right to bear firearms. Now, I'm not aware of any analogous as-applied challenges to that individualized challenges to the loss of the right to vote or the loss of the right to serve on a jury, and the plaintiff certainly hasn't pointed to any of them. We may have some coming along. Well, certainly if you were to recognize this sort of individualized determination for firearms, there's no reason why that shouldn't also extend to other rights that have traditionally been lost. But there's no reason to do that because, of course, those civic rights have been subject to categorical exclusion, and that's not because of some individualized determination of some strict dangerousness consideration. There's more broad reason that someone's not trustworthy, not fit to exercise this right. Now, my opposing counsel said that Heller made only felons presumptively, you know, the application of Section 922G1 only the felons presumptively lawful, but no court has adopted that reasoning. Every court has understood Heller to be speaking about Section 922G1 more generally, which, of course, does include misdemeanors that are sufficiently serious. And, indeed, this court in Dutton dealt with an as-applied challenge brought by someone convicted of a misdemeanor, and so that individual qualifies as a felon under the law, given the length of sentence that could have been imposed for his crime. And, finally, my opposing counsel suggests that our position here is that there are no as-applied challenges ever. We understand Barton to recognize the possibility of as-applied challenges, and our position doesn't depend on rejecting that at all. Even in as-applied challenges, the court has to have a principled way to draw lines, and a court is always judging what Congress has done. So in a facial challenge, the court's looking to whether there's any application of the law that's constitutional. In an as-applied challenge, a court is looking to see whether Congress was required by the Constitution to create some exception for some group of people into which the plaintiff falls. It does not mean that in an as-applied challenge, the court should be making its own judgment, a predictive judgment about how harmful or how dangerous this person might be in the future. Has Congress carved out exceptions into which some people may fall? Congress has allowed individuals to get their firearm rights back if the state expunges their conviction and restores their rights. So here, for example, the plaintiff lost his right to serve on a jury. Pennsylvania has not restored that right. And I think Congress reasonably has determined, well, if Pennsylvania doesn't trust you to serve on a jury, then we're not going to entrust you to exercise a right to bear arms. And that is certainly a reasonable judgment. Whether you find that under the first step in Marzarella, that there's simply no Second Amendment right, which I think is the most straightforward way to address this case, or whether you proceed to mean sentence scrutiny and look at whether Congress has acted reasonably here, that is a reasonable judgment. And what the plaintiff hasn't done is identified some category of individuals into which he falls that it's unreasonable to apply him to. So he hasn't pointed out statistics saying, well, individuals convicted of this crime aren't dangerous, or this hasn't been treated seriously. If we decide under Barton that we have to consider whether the Second Amendment should apply to Mr. Binderoff, what level of scrutiny do we use? If this Court proceeds to the second step, then it should apply intermediate scrutiny, as every court of appeals. Say that again. It should apply intermediate scrutiny. As the Court announced in Marzarella, the law has to serve a substantial purpose, and it has to be reasonably related to that purpose, not perfect. And every court of appeals has applied intermediate scrutiny. There was a Sixth Circuit panel in Tyler that applied strict scrutiny, but that decision has been vacated and is being reheard en banc. And certainly intermediate scrutiny applies here, because no matter how else you think of the plaintiff here, he was convicted of a crime, and so he does fall outside of that core Second Amendment right. And, you know, even if it hasn't quite challenged them, the question is, has Congress acted reasonably in not drawing out some exception that captures the plaintiff here? And it certainly has. As we put out in our briefs, there's lots of statistics that suggest that individuals like the plaintiff are dangerous, and the plaintiff hasn't really- That really are persons similar to the plaintiff. Your statistics, it seems to me, they're much broader. Well, there are statistics that are more broad, but there are also statistics specific to individuals convicted of crimes that involve the same or similar conduct. So, for example, we point to an Arizona study of individuals convicted of statutory rape, which involves having sex with someone 15, 16, or 17. And there, I think the number is, let's see, I think it's 40 percent. There's a 40 percent rearrest rate among those individuals, and a substantial portion of those rearrests are for violent crimes. But are they 19 years later as opposed to one year later or two years later? Well, understandably, the studies don't extend that far. I think they all just simply look at a three-year horizon. But on the other side, the plaintiff hasn't pointed to anything saying that there is, you know, some time at which an individual becomes safe. And the Ninth Circuit rejected that same argument in Chauvin for the same reason. Mr. Nemiroff, thank you very much. Thank you. Thank you both. Excellent arguments. We'll take the case under advisement.